UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TRANSPORTATION INSURANCE COMPANY, et al., <br><br> Plaintiff, <br><br> v. <br><br> MOTORISTS MUTUAL INSURANCE COMPANY, et al., <br><br> Defendants. | CIVIL ACTION NO. 3:14-CV-01438 <br><br> (MEHALCHICK, M.J.) |

**MEMORANDUM OPINION**

Presently before the Court is a motion for partial summary judgment filed by Plaintiffs Transportation Insurance Company and Continental Insurance Company (collectively "Plaintiffs"), against Defendant Motorists Mutual Insurance Company ("Motorists Mutual"), seeking inter alia, defense costs and expenses incurred in providing a defense for their insured, AAA Mid-Atlantic, Inc. ("AAA"), in connection with an underlying personal injury action in the Court of Common Pleas for Luzerne County.[1] (Doc. 72).

The motion has been fully briefed, and oral argument on the motion was held on January 19, 2016. Upon consideration of the arguments presented in the briefs and at oral argument, for the reasons stated herein, the Court will grant Plaintiffs' motion for partial summary judgment. (Doc. 72).

---

[1] Per the stipulation between Plaintiffs and Motorists Mutual, the parties have agreed to hold in abeyance any discovery and arguments with respect to the reasonableness and necessity of the defense costs and expenses incurred by Plaintiffs to defend AAA in the underlying action.

I. **FACTUAL AND PROCEDURAL BACKGROUND**

The facts relevant to the resolution of this instant motion for partial summary judgment are as follows. This action arises out of an underlying negligence suit involving the death of Denise A. Polinchak ("Ms. Polinchak"). On March 7, 2011, Ms. Polinchak experienced brake failure on her 1999 Buick Century Sedan while driving to work. At the end of her workday, she called AAA and requested that her Buick be towed from her place of work in order to be serviced and/or repaired. AAA purportedly contacted JH Auto, one of its contracted roadside assistance providers, who then dispatched Robert Wickham ("Mr. Wickham"), an employee of JH Auto, to Ms. Polinchak's location to assist her in the tow of her vehicle. Mr. Wickham, in the course and scope of his employment for JH Auto, arrived at Polinchak's place of employment intoxicated. In Mr. Wickham's attempt to move the Buick from its parked position onto the tow truck, he purportedly caused the vehicle to strike Ms. Polinchak, causing her death.

Ms. Polinchak's estate filed suit in the Court of Common Pleas for Luzerne County on May 19, 2011 against AAA, JH Auto, and Mr. Wickham. On February 20, 2013, an amended complaint was filed in the underlying action. The amended complaint asserted both direct negligence claims and vicarious liability claims against AAA.

This action was initially filed in order to seek a determination of Plaintiffs Transportation Insurance Company and Continental Insurance Company's rights and obligations as to AAA under certain policies of insurance issued by Plaintiffs to AAA in connection with the underlying personal injury action. Moreover, these Plaintiffs also sought a determination as to Motorists Mutual's primary obligation to defend AAA in the underlying

action, and sought damages against Motorists Mutual as a result of defense costs and expenses that Plaintiffs were forced to incur on behalf of AAA in defending AAA in the underlying action. While all claims between AAA and Plaintiffs have been resolved and dismissed, the claims regarding Motorists Mutual's duty to defend AAA in the underlying action remain, forming the basis of this pending motion for partial summary judgment filed by Plaintiffs on October 27, 2015. (Doc. 72).[2] Specifically, Plaintiffs seek damages against Motorists Mutual for its refusal to provide a defense for AAA.

This case, having been fully briefed and presented at oral argument, is now ripe for disposition.

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's

---

[2] Plaintiffs acknowledge that the indemnity limit under the Motorists Mutual policy of $500,000 was exhausted in conjunction with the settlement of the underlying action and Plaintiffs do not seek any indemnity costs from Motorists Mutual in excess of the $500,000. Rather, the remaining claims solely relate to defense costs under the Motorists Mutual policy, paid separate from and in addition to the indemnity limit of $500,000.

must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 278 (3d Cir. 2000). In making this determination, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994). The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

### III. DISCUSSION

Plaintiffs argue that they are entitled to recover their defense costs from Motorists Mutual in their defense of AAA in the underlying action because Motorists Mutual shirked its "sole primary" obligation to defend AAA pursuant to the terms of the Motorists Mutual policy, of which, AAA is an additional insured. Motorists Mutual contends that it owed no duty to defend AAA in the underlying action because the amended complaint contained averments of AAA's "direct" negligence arising out of AAA's performance of its roadside service business, which does not fall within the scope of coverage provided by Motorists Mutual. Alternatively, Motorists Mutual argues that it provided a defense to AAA with respect to the vicarious

liability claims insofar as it defended its insureds, JH Auto and Mr. Wickham, in the underlying action.

There is no dispute that because jurisdiction in this case is predicated on diversity, the substantive law of the forum state—here being Pennsylvania—applies. In Pennsylvania, "[d]etermination of the proper coverage of an insurance contract when the facts are not in dispute is a question of law." *Pacific Indem. Co. v. Linn*, 766 F.2d 754, 760 (3d Cir. 1985) (citing *McDowell-Wellman Engineering Co. v. Harford Accident & Indem. Co.*, 711 F.2d 521, 525 (3d Cir. 1983)). As the parties have agreed that this dispositive motion presents no genuine issue of material fact, thereby entitling the parties to judgment as a matter of law, the remaining legal issues raised by Plaintiffs in their motion for partial summary judgment requiring resolution are: (1) whether Motorists Mutual had a duty to provide a defense to AAA in the underlying action and, (2) if so, whether its duty to defend was primary to AAA's own insurance policies issued by Plaintiffs, such that Motorists Mutual was deemed to have breached its duty to defend by declining to represent AAA at the outset of the underlying litigation.

### A. WHETHER MOTORISTS MUTUAL HAD A DUTY TO DEFEND AAA

Under Pennsylvania law, "[a]n insurer's duty to defend an insured in litigation is broader than the duty to indemnify." *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999) (citing *Erie Ins. Exch. v. Claypoole,* 673 A.2d 348, 355 (Pa. Super. Ct. 1996)). The "obligation to defend arises whenever the complaint filed by the injured party may *potentially* come within the coverage of the policy." *Gedeon v. State Farm Mut. Auto. Ins. Co.*, 188 A.2d 320, 322 (Pa. 1963) (emphasis in original). "If a single claim in a multi-claim lawsuit is potentially covered, the insurer must defend all claims until there is no possibility that the

underlying plaintiff could recover on a covered claim." *Frog, Switch & Mfg. Co.*, 193 F.3d at 746 (citing *Erie Ins. Exch. v. Transamerica Ins. Co.*, 533 A.2d 1363, 1368 (Pa. 1987)); *Penn-America Ins. Co. v. Peccadillos, Inc.*, 27 A.3d 259, 265 (Pa. Super. Ct. 2011) ("Accordingly, even if 'there are multiple causes of action and one would potentially constitute a claim within the scope of the policy's coverage, the insurer would have a duty to defend until it could confine the claim to a recovery excluded from the policy.'") (citation omitted)). The duty to defend continues until such time as the claim is limited to relief that the policy does not cover. *Gen. Acc. Ins. Co. of Am. v. Allen*, 692 A.2d 1089, 1095 (Pa. 1997). Conversely, if an injured party's complaint does not potentially come within the coverage of the policy, the duty to defend is not activated. *See Erie Ins. Exch. v. Claypoole*, 673 A.2d 348, 355-56 (Pa. Super. Ct. 1996) ("[O]nly allegations contained within the underlying complaint pertaining to injuries which are either actually or potentially within the scope of the insurance policy obligate the insurer to defend the insured.").

"Before considering whether a complaint is potentially covered by a policy, it is necessary to determine the coverage of the policy in the first instance. . . . Once coverage of the policy is determined, the court then looks to the underlying complaint to see if it triggers coverage." *Lucker Mfg., A Unit of Amclyde Engineered Prods., Inc. v. Home Ins. Co.*, 23 F.3d 808, 813-14 (3d Cir. 1994). In making this determination, "the particular cause of action that a complainant pleads is not determinative of whether coverage has been triggered. Instead it is necessary to look at the factual allegations contained in the complaint." *Mut. Benefit Ins. Co. v. Haver,* 725 A.2d 743, 745 (Pa. 1999).

The insured has the initial burden of establishing coverage under an insurance policy. *Butterfield v. Giuntoli,* 670 A.2d 646, 651–52 (Pa. Super. Ct. 1995). If coverage is established, the

insurer then bears the burden of proving that an exclusion applies. "Where an insurer relies on a policy exclusion as the basis for its denial of coverage and refusal to defend, the insurer has asserted an affirmative defense and, accordingly, bears the burden of proving such a defense." *Madison Constr. Co. v. Harleysville Mut. Ins. Co.,* 735 A.2d 100, 106 (Pa. 1999).

Here, the duty to defend AAA is dependent upon the coverage afforded by the Motorists Mutual policy. Turning to that policy, AAA is listed by endorsement as an additional insured under the "Business Auto Coverage Form" and the "Garage Coverage Form" of the Motorists Mutual policy. (Doc. 72-6, at 117). The endorsement insures AAA, "but only with respect to [AAA's] liability because of acts or omissions of [JH Auto and its employees]." (Doc. 73-6, at 117). JH Auto and Mr. Wickham, an employee of JH Auto, qualify as "insureds" under the Motorists Mutual policy. (Doc. 72-6, at 9). As acknowledged by both parties at oral argument and in their respective motion papers, the language of the Motorists Mutual policy is not susceptible to more than one interpretation with respect to its coverage of AAA for claims of vicarious liability arising from acts or omissions of JH Auto. (Doc. 73, at 19; Doc. 75-1, at 8). Furthermore, it is undisputed that no policy exclusion is potentially applicable.

The Court is next tasked with comparing the terms of the Motorists Mutual policy to the factual allegations contained within the four corners of the complaint filed in the underlying action to determine whether Motorists Mutual had an obligation to defend AAA. Count I of the amended complaint filed in the underlying action avers that "the careless, reckless and negligent conduct of the Defendant, Robert Wickham, individually and as the agent, servant, workman, employee and/or ostensible agent of the Defendants, AAA Mid-Atlantic and Herbert's, vicariously . . . caused the death of the Plaintiff's Decedent, Denise A. Polinchak."

(Doc. 72-4, at 6). Again, both parties do not dispute that the amended complaint comprehends an injury that falls potentially within the scope of the policy. Thus, it is clear that at least one allegation contained in the amended complaint potentially falls within coverage of the policy. Accordingly, the Court finds that the Motorists Mutual policy applies to the claims and damages alleged in the underlying amended complaint.

Nevertheless, Motorists Mutual argues that because the underlying amended complaint contains not only vicarious liability claims but also direct liability claims against AAA that are arguably not covered under its policy, it was only obligated to defend AAA with respect to the vicarious claims asserted against AAA arising from acts or omissions of JH Auto. Motorists Mutual insists that it fulfilled its obligation to defend AAA through its defense of JH Auto and Mr. Wickham. (Doc. 75-1, at 9 ("[A]ny defense of JH Auto and Wickham is, necessarily, a defense of AAA when the claims of AAA's vicarious liability will rise or fall in lock step with the claims of negligence brought against Motorists' insureds.")). Plaintiffs argue in response that Motorists Mutual's legal position advanced before the Court—that an insured can parse through a complaint and decide which, if any, claims covered under a policy it will defend the insured against—is not supported by Pennsylvania law, which requires the insurer to defend *all* claims raised against the insured even when only one of several claims could potentially be covered by the policy. (Doc. 77, at 5).³

---

³ Motorists Mutual attempts to distinguish *Lafayette College v. Selective Insurance Co.*, 450 F. App'x 144 (3d Cir. 2011), a non-precedential opinion relied on by Plaintiffs in their supporting brief. In *Lafayette College*, Lafayette College hired a general contractor to renovate part of the campus. 450 F. App'x at 145. As required by the construction contract, the general

The Court agrees that Motorists Mutual's argument is unavailing and quite frankly, contrary to well-established Pennsylvania law. "Under Pennsylvania law, when an insured tenders multiple claims to an insurer for defense, the insurer is obligated to undertake defense of the entire suit so long as at least one claim is potentially covered by the policy." *Caplan v. Fellheimer Eichen Braverman & Kaskey,* 68 F.3d 828, 831 n. 1 (3d Cir. 1995). Therefore, Motorists Mutual did not fully discharge its duty to defend AAA by representing JH Auto and Mr.

---

contractor obtained insurance through U.S. Fire Insurance Company that listed Lafayette College as an additional insured. The general contractor subcontracted a portion of the work. During the course of construction, an employee of the subcontractor was seriously injured. He filed suit against Lafayette College, among others. Lafayette College submitted the claim to U.S. Fire Insurance Company, the general contractor's insurer, which denied coverage. The employee obtained judgment at trial against Lafayette College. Lafayette College filed a declaratory judgment action against the general contractor's insurer, seeking recovery due to its failure to defend Lafayette College. The Third Circuit Court of Appeals, applying Pennsylvania law, held that U.S. Fire Insurance Company's policy covered Lafayette College with respect to claims of vicarious liability arising from the general contractor's actions. Thus, U.S. Fire Insurance Company violated the policy when it refused to defend Lafayette after receiving notice of the complaint, despite the presence of direct liability claims asserted against Lafayette College. *Lafayette Coll.*, 450 F. App'x at 146.

Motorists Mutual argues that this case is distinguishable from *Lafayette College* because the court in that case was not confronted with "multiple insurers, covering dissimilar risks, with independent duties to defend," as is the case here. Indeed, Motorists Mutual maintains that it was absolved of any duty to undertake a complete defense of AAA due to the presence of direct liability claims in the amended complaint, which Plaintiffs afforded coverage for. Alternatively, Motorists Mutual argues that even if it had a duty to defend AAA, that obligation to defend AAA with respect to any vicarious liability claims was limited to and satisfied by its defense of JH Auto and Mr. Wickham in the underlying action. Therefore, it was not required to assume an entire, independent defense of AAA. This Court declines to accept Motorists Mutual's interpretation of *Lafayette College* in light of the Third Circuit's instruction that "it [is] not determinative that the complaint asserts some claims based on Lafayette's own negligence, since the duty to defend [the entire action] exists when *any* clam asserted is potentially covered." 450 F. App'x at 146. That an insured is covered concurrently by more than one insurer does not absolve one insurer of tendering a defense where its policy requires it.

Wickham in the underlying action. Indeed, Motorists Mutual had an independent obligation to defend AAA, notwithstanding the fact that the underlying amended complaint contained other counts that clearly fell outside the scope of coverage.

> B. WHETHER MOTORISTS MUTUAL'S DUTY TO DEFEND AAA WAS PRIMARY TO PLAINTIFF'S DUTY TO DEFEND

Having established that Motorists Mutual owed a duty to defend AAA in connection with the underlying action, the question remaining is one of determining the proper allocation of coverage between the Plaintiffs' and Motorists Mutual's policies, specifically with respect to whether all three insurance carriers have a coextensive duty to defend or alternatively, whether one insurance carrier assumes a primary duty to tender a defense.

Plaintiffs posit that Motorists Mutual's policy is primary to, rather than co-extensive with, their own duty to defend AAA, and therefore, Motorists Mutual's noncooperation in refusing to tender a defense to AAA at the outset of the litigation constitutes a breach of contract. (Doc. 73, at 21). In support of this position, Plaintiffs cite the terms of the competing policies, which contemplate that Motorists Mutual's policy is primary to Plaintiffs' coverage of AAA. Motorists Mutual argues in response that the Court need not decide the priority of specific insurance policies because Plaintiffs' policies and Motorists Mutual's policy protect against different risks and thus, should not be considered "primary" or "excess" to one another. The Court considers each argument in turn.

With respect to Motorists Mutual's position, Motorists Mutual argues that Plaintiffs are not entitled to recoup their defense costs because its policy is not "other insurance" as to Plaintiffs' policies, in the sense that the three policies insure against different risks. Motorists Mutual frames its policy as insuring against the risk of acts or omissions of JH Auto being

imputed as a matter of law to AAA, whereas Plaintiffs' policies insure against the risk inherent in AAA's own negligent conduct. By Motorists Mutual's logic, all three insurers had a concurrent duty to defend AAA and contribute to the cost of the defense in equal shares. Motorists Mutual fulfilled that duty by providing a defense to JH Auto and Wickham in the underlying action, which necessarily operated as a defense to the vicarious liability claims against AAA.

"'Other insurance' clauses limit an insurer's liability where there is another policy applicable to the claimed loss." *Harstead v. Diamond State Ins. Co.*, 723 A.2d 179, 181 (Pa. 1999) (citing *Cont'l Ins. Co. v. McKain,* 820 F. Supp. 890, 903 (E.D. Pa. 1993) *aff'd,* 19 F.3d 642 (3d Cir. 1994); *Blue Anchor Overall Co. v. Pa. Lumbermens Mut. Ins. Co.,* 123 A.2d 413, 415 (Pa. 1956)). "Other insurance" exists "where there are two or more insurance policies covering the same interest, the same subject matter and against the same risk." *Blue Anchor Overall Co.,* 123 A.2d at 415. "Under Pennsylvania case law, where two policies have been held to cover different risks, the difference has been readily apparent." *Cont'l Ins. Co.*, 820 F. Supp. at 906. For example, in *Blue Anchor Overall Co. v. Pennsylvania Lumbermens Mutual Insurance Co.,* a case heavily relied on by Motorists Mutual, a plaintiff sought to recover from three insurers for damage to property caused by fire protective equipment. The Pennsylvania Supreme Court found that the three fire insurance policies were not "other insurance" as to each other with respect to the plaintiff's claim for water damage because only one of those policies insured against the risk of loss caused by leakage from fire protective equipment. 123 A.2d 413, 415 (Pa. 1956). In *Pacific Indemnity Co. v. Linn*, another case cited by Motorists Mutual, the Third Circuit, applying Pennsylvania law, resolved a dispute over the relative liability of four different insurers for

claims brought by dieters against a doctor accused of having committed malpractice by publishing a fad diet book. 766 F.2d 754 (3d Cir. 1985). Of the four insurers, two insurers providing professional liability insurance for the physician were found to be "other insurance" as to each other. *Pac. Indem. Co.*, 766 F.2d at 767. The other two insurers—one of which provided general liability coverage for bodily injury or property damage and the other of which provided homeowner's coverage for losses resulting from negligent personal acts—were held not to be "other insurance." *Pac. Indem. Co.*, 766 F.2d at 767.

Conversely, "courts have found the 'same risk' under policies that were in other respects, such as scope, quite different." *Cont'l Ins. Co.*, 820 F. Supp. at 906. For example, in *Miller v. Home Insurance Co.*, the Pennsylvania Superior Court found that two policies covering the plaintiff's home and barn insured against the same risk—loss by tornado—even though one policy insured against both fire and tornado. 164 A. 819, 821 (Pa. Super. Ct. 1933). Moreover, in *Widener University v. Fred S. James & Co.*, the court found that a general liability policy and three policies providing coverage for personal injury claims all insured against the same risk of costs incurred in defending a defamation claim. 537 A.2d 829 (Pa. Super. Ct. 1988).

Here, the Court finds unpersuasive Motorists Mutual's theory that there is no identity of risk where Motorists Mutual's policy insures AAA only with respect to vicarious liability claims arising from the acts or omissions of JH Auto and/or its employees, and where Plaintiffs' policies offer general liability coverage. Motorists Mutual too narrowly frames the risk these policies insure against, as it overlooks the material overlap in coverage between the three policies. The risk here is third-party liability due to the acts or omissions of Mr. Wickham, the tow truck operator, and/or JH Auto. All three insurance policies insure against that risk. It is

immaterial that Plaintiffs' policies provide AAA with additional coverage. *See Chestnut Hill Acad. v. Graphic Arts Mut. Ins. Co.*, No. CIV.A. 04-1560, 2005 WL 1715660, at *10 (E.D. Pa. July 22, 2005) ("Although it is true that the policies do not provide identical coverage, their coverage need not be completely coextensive for them to be considered "other insurance" as to each other.") (citing *Liberty Mut. Ins. Co. v. Home Ins. Co.,* 583 F. Supp. 849, 854 (W.D. Pa. 1984) (finding that two policies protected against the same interest, subject matter, and risk where one policy covered losses generally and other policy covered losses due to defective fabric); *Miller, 164 A. at 821* (finding two insurers bound by the same risk and thus, "other insurance" as to each other where one policy covered loss by tornado and other policy covered loss by fire and tornado)). Indeed, this is merely a situation in which there exists both specific and general coverage for a loss. Because all three policies provide coverage for AAA for vicarious liability claims, they are "other insurance" as to each other at least for such claims, and thus, the other insurance clauses will be given effect.

Having found that the policies are "other insurance" as to each other, the Court must consider the plain language and applicability of the "other insurance" clauses, especially with respect to whether one policy triggers an immediate duty to defend over the other policies. Indeed, as the underlying suit implicated multiple liability policies, each insurer's coverage priority is determined by the "other insurance" clauses set forth in the policies. In this case, the policies contain complementary "other insurance" clauses.

Plaintiff Continental Insurance Company's ("Continental") "other insurance" provision states:

>   a. For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the

>> insurance provided by this Coverage Form is excess over any collectible insurance. . . .
>
> **b.** Regardless of the provisions of Paragraph a. above, this Coverage Form's Liability Coverage is primary for any liability assumed under an "insured contract."

(Doc. 72-9, at 26).

Under Continental's policy, "insured contract" is defined, in relevant part, as:

> That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement[.]

(Doc. 72-9, at 28).

As it relates to Continental's policy, it is undisputed that the vehicles involved in Ms. Polinchak's death are not "owned" by AAA and that AAA has not assumed any liability under an "insured contract." Therefore, pursuant to its terms, the insurance provided by Continental's "Coverage Form is excess over any collectible insurance."

Pursuant to Plaintiff Transportation Insurance Company's ("Transportation") "other insurance" clause, "insurance is primary except when Paragraph b. . . . applies." (Doc. 72-8, at 19). Paragraph b., entitled Excess Insurance, provides that:

> **(1)** This insurance is excess over:
>
>> **(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:
>>
>> . . .
>>
>>> **(iv)** if the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of

> Section **I** – Coverage **A** – Bodily Injury and Property Damage Liability.[4]
>
> **(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.
>
> **(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit." If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

(Doc. 72-8, at 19).

---

[4] Exclusion g. of Section I – Coverage A – Bodily Injury and Property Damage Liability excludes from coverage:

> "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading."
>
> This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

(Doc. 72-8, at 12).

It is clear that this exclusion is not applicable here, as JH Auto's tow truck was not "owned or operated by or rented or loaned to" AAA, the insured.

Applying Transportation's unambiguous policy terms to the circumstances of the towing incident forming the basis of the underlying action, two provisions dictate that Transportation's coverage of AAA be considered excess over any other collectable insurance. First, the loss (Ms. Polinchak's death) arises out of the maintenance or use of an auto (the attempted loading of Ms. Polinchak's Buick onto JH Auto's tow truck) not subject to Exclusion g. Second, primary insurance is available to AAA covering liability for damages arising out of "the premises or operations, or the products and completed operations," for which AAA was added as an additional insured by attachment of an endorsement. Indeed, as noted above, AAA is listed by endorsement as an additional insured under the "Business Auto Coverage Form" and the "Garage Coverage Form" of the Motorists Mutual policy with respect to liability arising out of the acts or omissions of JH Auto and its employees. As for whether Motorists Mutual offers primary coverage, its "other insurance" provision indicates that the "Coverage Form's Liability Coverage is primary for any liability assumed under an 'insured contract.'"[5] (Doc. 72-6, at 131). "Insured contract" is defined under the Motorists Mutual policy as:

> That part of any other contract or agreement pertaining to your garage business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for 'bodily injury' or 'property damage' to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.
>
> (Doc. 72-6, at 134).

---

[5] While the Motorists Mutual policy excludes from coverage liability assumed under any contract or agreement, this exclusion does not apply to liability for damages "[a]ssumed in a contract or agreement that is an 'insured contract' provided the 'bodily injury' or 'property damage' occurs subsequent to the execution of the contract or agreement." (Doc. 72-6, at 121).

Here, the Roadside Assistance Service Provider Agreement between JH Auto and AAA, setting forth the rights and responsibilities of JH Auto as an independent roadside assistance contract facility for AAA, contains the following indemnification clause:

> [JH Auto] shall defend, indemnify and hold [AAA] harmless against all claims, action, suit, damages of any type (including punitive damages, attorneys' fees and court costs), or demands of customers or other persons for any claim, injury or damages (including without limitation injury or death to persons or damage to property or any claim or allegation whatsoever arising under any federal, state, or local anti-discrimination law or regulation including, but not limited to, the Americans With Disabilities Act), arising out of the performance, or any failure to perform, by contractor, its employees or agents of any services under this agreement. [JH Auto's] obligation hereunder shall not be limited by the provisions of any workers' compensation act or similar statute and shall survive termination of this agreement.

([Doc. 72-5, at 11](#)).

This sweeping indemnification provision, requiring that JH Auto defend, indemnify, and hold AAA harmless against all claims of any type, constitutes an "insured contract" as contemplated by the Motorists Mutual policy, as it includes within its scope the obligation that JH Auto assume the tort liability of AAA to pay for "bodily injury" to a third party.

Therefore, when considering the undisputed facts presented in the record, the well-settled law in Pennsylvania, and the complimentary terms of the three policies, the Court finds that Motorists Mutual was primarily obligated to undertake a defense in the underlying suit prior to Plaintiffs' assumption of the defense. By failing to defend AAA in the underlying litigation from its inception, Motorists Mutual effectively breached its contract with AAA. Accordingly, Plaintiffs are entitled to judgment as a matter of law as to liability on its breach of contract claim.

**IV.** **CONCLUSION**

Based upon the foregoing, the Court will grant Plaintiffs' motion for partial summary judgment. (Doc. 72).

An appropriate Order follows.

Dated: April 19, 2016                                                          *s/ Karoline Mehalchick*
                                                                                            **KAROLINE MEHALCHICK**
                                                                                            **United States Magistrate Judge**